**[J-59-2016] [MO: Todd, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

IN RE: ADOPTION OF: M.R.D. AND
T.M.D., MINOR CHILDREN

APPEAL OF: M.C., NATURAL FATHER

: No. 26 MAP 2016
:
: Appeal from the Order of the Superior
: Court at No. 1728 MDA 2013 dated
: December 8, 2015 Affirming the Order
: of the Lycoming County Court of
: Common Pleas, Orphans Division, at
: No. 6365, dated August 19, 2013.
:
: ARGUED:  May 10, 2016


**CONCURRING OPINION**


**JUSTICE WECHT**                                          **Decided: August 29, 2016**

I join in the learned majority's decision to reverse the termination of Father's parental rights.  I write separately to emphasize that termination of parental rights ("TPR") petitions are not to be used as weapons in child custody litigation, and that our courts must rebuff such attempts.

Termination of parental rights is an extreme and last-ditch measure.  Its finality is striking.  It is emphatically not a tool to be deployed in custody disputes.  The process undertaken by Mother in this case, employing her own father ("Grandfather") as a putative adoptive parent for her children, notwithstanding the fact that he remains married to Grandmother (Mother's mother), and notwithstanding the fact that Mother and Grandfather do not cohabit, strikes me as at best a clumsy and overweening attempt to gain advantage in custody.

There is no reason to doubt that Grandfather in this case is a caring person, one who has devoted much time and effort for the benefit of his grandchildren. This is something characteristic of many thousands of grandparents across Pennsylvania. Mother's attempt to latch onto Grandfather as a convenient resource -- indeed, as an adoptive resource -- should not have been approved by the trial court or by the Superior Court. To countenance Mother's litigation tactics would be to countenance corruption of our adoption laws.

Our decision in In re Adoption of L.J.B., 18 A.3d 1098 (Pa. 2011), recognized the danger of approving TPR petitions of this type. We observed that, to allow custody litigants to invoke TPR petitions as a weapon would foster the creation of orphans and "provide parents with a new, and in our view dangerous, tactic in heated custody disputes; indeed, one can imagine routine cross-petitions for termination as part of custody battles." Id. at 1110. Perish the thought.

For this reason, while I wholeheartedly agree with Justice Todd that "there are many families comprised of only a parent and a child where the single parent is fully capable of raising and providing for his or her child," Slip Op. at 2 (Todd, J. specially concurring), I cannot join her request that the General Assembly revisit the Adoption Act's requirement that a parent filing a TPR petition demonstrate that an adoption is contemplated. While it is unequivocally true "that today's families are not necessarily the traditional nuclear families that were envisioned at the time our adoption laws were initially drafted", id., and while I agree that our General Assembly should scrutinize the Domestic Relations Code for anachronistic or obsolete provisions, I have presided over far too many acrimonious custody trials to favor statutory revisions which would

encourage or condone the use of TPR petitions to gain leverage in (or perhaps short-cut or foreclose) custody disputes.

In this particular case, the Superior Court's opinion strikingly ignores the fact that the proposed adoption lacked the required integrity, inasmuch as it appears to have been initiated merely to stave off and defeat Father's claim for custody. Indeed, it was not until Father showed signs of pursuing his custody claims that Mother decided, L.J.B. notwithstanding, to pull the TPR arrow out of the quiver and attempt to nock her bowstring with it. Hence, proclaims the Superior Court: "Only when Father filed his unforeseen petition for custody of Children, did Mother and Maternal Grandfather need court intervention to protect Children." In re Adoption of M.R.D., 128 A.3d 1249, 1264 (Pa. Super. 2015) (*en banc*). Whether "unforeseen" or not, one is left to wonder why Mother did not file a petition for confirmation of custody, or simply defend against Father's complaint based upon his lack of involvement, or seek some other custody relief of the several types sought by litigants in this Commonwealth every day of the week. While Mother's alternative response (filing a TPR petition and seeking to have Grandfather named as an adoptive "parent") may have shown creativity and determination, it did not comport with Pennsylvania law. This is especially so given the demonstrable fact that the trial court in this case, like trial courts all across this Commonwealth, has robust discretionary authority to limit and even completely curtail Father's custody rights under the custody statutes without resort to the draconian remedy of termination of parental rights under the adoption laws.

Another peculiar curiosity of the decisions reached by the trial court and the Superior Court in this case is the near-complete deletion of the maternal Grandmother's

role.  Recall that Grandfather and Grandmother cohabit, that they are both grandparents to the children involved in this case, that they are both parents of the petitioner mother in this case, and that they both would be affected by the judicial relief afforded by the lower courts here.  Nonetheless, to read the opinions of the trial court and the Superior Court in this case, one might be forgiven for concluding that Grandmother has faded away into the wallpaper.  Since Grandfather would now become the "father" of the children as well as their grandfather, Grandmother presumably would now become not just their grandmother but also their step-mother.  What is more, Grandmother would continue to cohabit with the children's new "father," even though the children live in a separate location with their mother, a person who also is Grandmother's / step-mother's natural daughter.  While Grandfather would now become not only the grandfather but also the "father" of the children, and accordingly the co-parent of his own daughter, Grandmother would remain only a grandmother, without parental rights.  Moreover, in the event that Mother would choose to marry, Grandmother would find herself married to a man who is the "father" of children who live with a step-parent who is not regarded as part of a new family unit.

It is impossible to discern with any level of clarity whether the lower courts in this case were rewarding Grandfather for his diligence as a grandparent, or punishing Father for his absence, or supporting Mother by directing more assistance toward her, or collapsing the custody and adoption laws upon one another so as to create a potpourri of remedies for Mother in family court.  In any case, it is critically important that our judges not make bad situations worse by allowing often-angry parents to turn custody disputes into orphan factories.